UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

Andre Lane,                                                    :
                                                               :
                             Plaintiffs,                       :   Civ. No.: 14-cv-5737
                                                               :
-against-                                                      :
                                                               :   Complaint and Jury Demand
City of New York, New York City Department of                  :
Corrections, Captain Rod Marcel, in his individual and :
official capacity, Captain Budnarine Behari, in his            :
individual and official capacity, Officer Lameen               :
Barnes, in his individual and official capacity,               :
John and Jane Does 1-10, in their individual and               :
official capacity, New York City Department of                 :
Corrections Supervisory Officers John Does 1-10.               :
                             Defendants.                       :

---------------------------------------------------------------- X

<u>Introduction</u>

Mr. Lane asserts this action to seek redress from a vicious gang assault committed by Officers of the Department of Correction in an ongoing and prevalent environment which condones, accepts and promotes the use of excessive force. Due to the acceptable practice of use of excessive force, the perpetrating officers were permitted to take a handcuffed Mr. Lane to a camera-less portion of the medical wing and viciously beat him until he lost consciousness. The beating was so brutal that Mr. Lane's blood remained splattered upon the walls of the room and medical staff because physically ill at the signs and sounds of an indefensible human being mercilessly beaten within an inch of his life.

The custom of excessive force is so prevalent at Rikers Island that Correction Officers are no longer content with simply perpetrating this unlawful activity on a on individual basis. Rather, Correction Officers are now routinely teaming up with one

another to perpetrate gang assaults and employ excessive force in concert with one another. Supervisors encourage, promote, and supervise the employment of excessive force by teams of Correction Officers who are determined to unleased unrestrained physical assaults upon defenseless inmates.  Mr. Lane files this action to seek redress for these unlawful actions, prevent them from continuing, and publicize the unlawful tactics of excessive force and gang assaults committed by Correction Officers.

Jurisdiction

1. This action is brought pursuant to the Eighth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. §§ 1983, 1988.

2. Venue is proper in this court pursuant to 28 U.S.C. § 1391.

Parties

3. Plaintiff is a citizen of the United States and currently resides in Queens County, NY.

4. Defendant City of New York ("City") is a municipal corporation which, through its Department of Correction ("DOC"), operates a number of detention jails, including all of the jails at issue in this lawsuit at Rikers Island.

5. The DOC, is an agency of the City of New York.  Through its senior officials at the central office at the DOC and in each facility, promulgates and implements policies, including policies with respect to the use, reporting, and investigation of force by uniformed staff. In addition, the Unconstitutional Use of Force Practice has been and continues to be known to, perpetuated, permitted and encouraged—and thus institutionalized—by DOC supervisors, including high-ranking central

office DOC personnel even though it is inconsistent with formal DOC policy. Because the Unconstitutional use of force practice is widespread, long-standing, and deeply embedded in the culture of the DOC, it constitutes an unwritten municipal policy or custom of the City. The DOC is also responsible for the appointment, training (or lack thereof), supervision, and conduct of all DOC personnel, including the Defendants referenced herein.

6. Defendant Captain Budnarine Behari is a Correction Officer, with the title of Captain, employed by the DOC and at all times was an agent of the DOC, acting under the color of state law, and in his official capacity.

7. Defendant Captain Rod Marcel is a Correction Officer employed by the DOC, with the title of Captain, and at all times was an agent of the DOC, acting under the color of state law, and in his official capacity.

8. Defendant Officer Lameen Barnes is a Correction Officer employed by the DOC and at all times was an agent of the DOC, acting under the color of state law, and in his official capacity.

9. Defendants John and Jane Does are Correction Officers whose identity is not yet known.

10. Defendants New York City Department of Corrections Supervisory Officers John Does 1-10 are DOC employees and supervisors whose identity is not yet known.

Facts

11. For no legitimate or lawful purpose, the Defendants, a gang of approximately five Correction Officers and two Supervisors, viciously assaulted the Plaintiff while in their custody on or about July 2012.

12. The Defendants took the Plaintiff to a location in the Prison's medical ward where they knew there would be no cameras and viciously beat the Plaintiff until he lost consciousness.

13. During this vicious assault, the Plaintiff was handcuffed to a bed and was unable to protect or defend himself.

14. The Defendants beat the Plaintiff with their hands, feet, and brass knuckles with such ferocity that the Plaintiff's blood was spattered upon the walls of the medical ward.

15. Medical staff could hear the Plaintiff screaming and crying for his life.

16. The medical staff heard the beating of the Plaintiff and many became visibly upset and physically ill at the inhumane treatment of the Plaintiff.

17. The Defendants had no legal justification for the use of said force, and it was by all accounts excessive.

18. The vicious assault visited upon the Plaintiff caused numerous lacerations, a significant loss of blood, permanent scarring, and emotional and psychological injuries.

19. The gang beating, such as the one suffered by the Plaintiff, is a rampant problem at the DOC.

20. The DOC has received hundreds of complaints of inmates being unlawfully beaten by gangs of Correction Officer.

21. Despite this clear and obvious problem, the DOC has not taken any steps to stem this epidemic, leaving inmates to the unchecked violent whims of Correction Officers. Indeed, this failure has resulted in a climate in which Correction Officers feel at liberty to team up with one another to perpetuate these unlawful actions.

22. Correction Officers know that rather than stop them, fellow Officers will acquiescence, not intervene, or join in the unlawful use of force.

23. Indeed, upon information and belief, despite the hundreds of complaints for excessive force and assault, not one of those complaints came from any fellow officers and none of those complaints revealed that any fellow Officers sought to intervene.

24. At all times the Defendants were acting under the color of state law.

25. Excessive force is at all times known by to be used by rank and file officers, as well as by supervisors.

26. The City failed to train its officers in the proper use of force as it pertains to both mentally ill inmates as well as non-mentally ill inmates. In addition, the City failed to train its officers in the employment of force in concert with one another, and whether multiple applications of force simultaneously are excessive.

27. Indeed, the City does not provide its officers with acceptable guidelines on how to use force when interacting with inmates as well as how to apply the minimal

amount of force in achieving a lawful objective.  This is particularly so when multiple Officers simultaneously use force against a single inmate.

28. Supervisors and high-level staff, condoned, and encourage the use of excessive force.

29. Indeed, there is a culture that encourages the infliction of violence and excessive force upon inmates.

30. The City's refusal to engage in a meaningful, if any, investigation of allegations of excessive force leads to a culture of tolerance and promotion of excessive force.

31. Indeed, the investigations into allegations of excessive force are nothing more than shams, often resulting in no discipline to violating officers but rather discipline to the victim.

32. Moreover, the City has failed to properly train its Correction Officers in the use of force, the prohibition of excessive force, and how to interact with mentally ill patients.

33. The Defendants fail to follow their own guidelines in investigation acts of excessive force, rendering said guidelines a farce.

34. Indeed, these so-called investigations do not gather critical evidence, fail to interview non-DOC staff, and on many occasions do not interview the victim.

35. What is more, there is a custom and policy of using excessive force outside the scope of cameras affixed to the correctional facility to monitor excessive force.

36. The Defendants have created a situation whereby Correction Officers know that the way to escape scrutiny for their unlawful actions is to simply commit their crimes outside the eye of cameras.

37. These blind spots offer refuge for the officers' unlawful conduct.

38. The result is that the critical neutral eye of the camera is rendered obsolete, and reports of excessive fore ultimately come down to the victim's word versus the word of an offending Correction Officer.

39. Indeed, this is exactly the case here where the Defendant Officers knew exactly where the blind spots were, and took the Plaintiff to those spots to commit a horrendous assault upon him.

40. This reveals that these Officer no doubt knew that these areas were blind spots and had previously committed similar gang assaults in those unmonitored areas.

41. Moreover, as the Defendant Officers already knew, there would be no investigation in the excessive force complaint leveled by Mr. Lane.

42. Each of the Defendant Officers has a despicable history of complaints regarding excessive force prior to assaulting the Plaintiff, and indeed they continued this pattern and practice after the incident regarding the Plaintiff.

43. Despite these complaints and the propensity of these officers to engage in excessive force, they were never disciplined, reprimanded, reviewed for fitness, investigated, retrained, or otherwise admonished.

44. Shockingly, two of the Defendants are Captains in the DOC.  As Captains, they enjoy high rank at the DOC.

45. These high-ranking Defendants used their positions of power to perpetrate and promote vicious assaults and acts of excessive force.

46. These high-ranking officials also encouraged and requested that subordinate officers engage in the same unlawful conduct.

47. The apparatus for monitoring these officers is nothing more than a charade given the fact that a Captain's use of force is never questioned or investigated. Therefore, subordinates use of excessive force in concert with and at the behest of supervising officers is all but guaranteed, and occurs on a regular basis.

48. The aforementioned lack of training and supervision, as well as the lack of any meaningful investigation into complaints of excessive force, lead to situations such as the one at hand whereby the Plaintiff was beaten by at least seven Correction Officers, at least two of which were Captains who supervised the use of excessive force.

49. Moreover, upon information and believe, it is well settled that even if Correction Officers do engage in excessive force, there will be little to no meaningful repercussion.

50. It is beyond dispute the City and DOC are on notice of the epidemic of excessive force. Indeed, there have been countless complaints of excessive force, numerous lawsuits regarding excessive force, and various independent investigations into excessive force. Each of these events yielded irrefutable proof that the employment of excessive force, particularly in tandem, is a reality at the DOC.

51. What is more, many, if not all of the Defendant officers, have either had voluminous complaints of excessive force lodged against them or been subject to lawsuits for civil rights violations.

52. Despite the aforementioned notice, the City continues to fail in providing any meaningful response.

53. Moreover, in settlement of recent cases such as <u>Ingles v. Toro</u>, 01 Civ. 8279 (S.D.N.Y. 2006), the City and the Doc knew that there were systemic issues regarding excessive force that must be addressed.

54. The <u>Ingles</u> decree resolved some of those issues through Court-Ordered mechanisms. These mechanisms initially aided the abetment of widespread use of excessive force, but the mechanisms were then discontinued.

55. Given the aforementioned failure to train, supervise, discipline, and monitor its officers, the City adopted a <u>de facto</u> pattern and practice of encouraging and promoting the use of excessive force.

56. The City's actions in promoting the use of excessive force and doing nothing to stop the practice or the practice of gang beatings by Officers are tantamount to a deliberate indifference regarding Plaintiff's Constitutional rights.

<u>Count I. Violation of Plaintiff's Federal Constitutional Rights</u>

57. Plaintiff repeats and re-alleges each and every paragraph as if recited herein.

58. The actions of the Defendants deprived Mr. Lane of rights, remedies, privileges, and immunities guaranteed to every person, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Eighth and Fourteenth

Amendments to the United States Constitution to be free from unnecessary and excessive force as well as the right to be free from assault and cruel and unusual punishment.

59. Defendants acted under pretense and color of state law and within the scope of their employments as DOC officers and employees. As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr. Lane sustained the damages alleged.

## Count II-*Monell* Liability

60. Plaintiff repeats and re-alleges each and every paragraph as if recited herein.

61. Defendant City, through DOC, and acting under the pretense and color of law, permitted, tolerated and was deliberately indifferent to a pattern and practice of staff brutality and retaliation by DOC staff at the time of the beating of Mr. Lane. This widespread tolerance of Correction Officer abuse of prisoners, particularly gang assaults committed by Officers, constituted a municipal policy, practice or custom and led to the assault of Mr. Lane. By permitting, tolerating and sanctioning a persistent and widespread policy, practice and custom pursuant to which Mr. Lane was subjected to a brutal beating, defendant City has deprived Mr. Lane of rights, remedies, privileges, and immunities guaranteed to every person of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed under the Eighth and Fourteenth Amendments to be free from unnecessary and excessive force and retaliation. As a direct and proximate result

of the policy, practice and custom detailed above, Mr. Lane sustained the damages alleged.

62. Indeed, the failure to train, supervise, discipline, and investigate the use of excessive force complaints, particularly gang assaults, is tantamount to an official custom an policy of the City through the DOC of condoning and promoting the use of force in violation of Plaintiff's rights.

Count III-Failure to Intervene

63. Plaintiff repeats and re-alleges each and every paragraph as if recited herein.

64. Several officers engaged in and/or observing the unlawful and vicious assault of Mr. Lane had a duty and obligation to intervene to prevent the violation of his rights.

65. Moreover, there were several opportunities for said officers to intervene but they declined to do so.

66. Rather, some Officers watched the unlawful assault of Plainitff while other participated.

Count IV-Supervisory Liability

67. Plaintiff repeats and re-alleges each and every paragraph as if recited herein.

68. Several supervisors, including Captains, Lieutenants, and Wardens are responsible for the actions of their subordinates in that they maintained a policy that accepted, tolerated, and promoted the employment of excessive force by their subordinates.

69. In addition to the aforementioned this practice and custom was created but 1. Failing to investigate reports of excessive force, 2. Creating blind and desolate

areas outside the scope of surveillance in which merciless gang assaults by Officers could be accomplished with the knowledge that they would not be recorded, 3. By not speaking to non-DOC staff who provided additional evidence of the practice of excessive force, 4. Actually participating and directing the employment of excessive force, and 5. Encouraging Officers to engage in excessive force in tandem with other officers, not requiring witnesses to report misconduct, punishing witnesses who do report misconduct, punishing witnesses who fail to intervene or report misconduct, and failing to maintain a viable policy to root out the use of excessive force and gang beatings.

70. What is more, these Defendants encouraged their subordinates to engage in excessive force by not enforcing policies and procedures designed to inhibit said conduct.

71. These Defendants should have adopted a zero tolerance for the use of excessive force and the use of excessive force in tandem with other officers.

72. In doing so, the aforementioned supervisor displayed a deliberate indifference to the consequences of their de facto policy, practice, and custom, which was the violation of Mr. Lane's Constitutional rights to be free from excessive force.

73. The aforementioned custom and practice created not only a risk of Mr. Lane and other inmates being subjected to excessive force, but made it a certainty.

74. Given the voluminous complaints over the years and the unabashed participation in excessive force, the supervisors were well aware of the risk that they created. Indeed, some of them outwardly condoned these actions and promoted them.

Moreover, it appears that they were content with this risk being ever present in the DOC. It is clear that these supervisors were deliberately indifferent to the risks they created.

75. Finally, the violation of Mr. Lane's rights were a result of the Officer's supervisors creation of the practice and custom, as well as failure to implement the guidelines that investigate said violations and prevent them.

WHEREFORE, the Plaintiff seeks:

1. Declare that the conduct of the supervisory Defendants as described above, violates the rights of Mr. Lane under the Eighth and Fourteenth Amendments to the Constitution of the United States;

2. Enjoin Defendants, their successors, agents, servants, employees, and all those in active concert or participation with them from subjecting inmates in the DOC jails to unlawful physical abuse and the threat of unlawful physical abuse, and require these Defendants to formulate and effectuate a remedy, subject to the court's approval and modification, if necessary, to end the practices and policies challenged in this lawsuit, including the Unconstitutional Use of Force Practice, in every unit in all Department jails, with the exception of those Department Commands already under current court orders directed at the misuse of force;

3.  An award of compensatory damages in an amount to be determined at trial against Defendants, jointly and severally, on each of federal causes of action; and

4. An award of punitive damages.

Dated: September 30, 2014

The Aboushi Law Firm
s/Aymen A. Aboushi
Aymen A. Aboushi, Esq.
1441 Broadway, 5th Fl.
New York, NY 10018
Tel: (212) 391-8500
Fax: (212) 391-8508
Attorneys for Plaintiff